This is our second case of the morning. In re. Objection to Tax Levy of Quincy for the year 2006, Quincy S.D. 4090185 for the appellant Mr. James and for the athlete Mr. Garman and Mr. Flory. You may proceed. Thank you, your honors. Thank you to the court and opposing counsel. My name is Tom James and I represent the tax objectors in this case. This appeal arises from a Rule 304A ruling from the tax proceedings in Adams County. Tax objectors pleaded in two counts. Count 1 was a statutory tax objection and Count 2 was an equitable tax objection. Both counts sought to use the Doctrine of Representation to allow full redress to all of the lots, lands and parties in the taxing district. The trial court struck the Doctrine of Representation from relief from Count 1 and struck Count 2 with prejudice in its integrity. This appeal argues that the Doctrine of Representation should be allowed in Count 1 to allow to provide a complete remedy for all the reasons that are stated in the record. We have additionally argued with regard to Count 2 under the Doctrine of Representation that it applies as an unauthorized tax as an independent ground for equitable relief regardless of the existence of the adequate remedy at law. We've cited the various cases at pages 13 and 14 of our brief in that regard. Over the course of the summer of 2009, two things also happened. The 3rd District issued an opinion in Ray Objection 2005 Tax Levy in LaSalle County and the 1st District issued an opinion in the Millennium Park Joint Venture decision. These both deal with unauthorized taxes. The difference between these two cases is that in the 3rd District, which also happens to be a case where myself and court counsel are representing tax objectors, the 3rd District held that the property tax is a complete remedy and equity will not assume jurisdiction to grant relief where a complete remedy exists. The 1st District case is also an unauthorized tax case. In the 1st District, the court, and I'm quoting, both parties acknowledge the unauthorized tax. They both acknowledge that the unauthorized by law doctrine exists. The court then goes on and explains, the unauthorized by law doctrine is one of two exceptions to the rule that equity will not assume jurisdiction to provide tax relief. The exception allows a taxpayer to seek relief without first exhausting legal remedies. One of the points in that is that it allows the court to assume that equitable jurisdiction. One of the points that we have brought out in the briefs is that pursuant to People's Gas and Light v. Slattery, that is a jurisdiction that cannot be removed from the courts. That's of import because under 2315 there is a passage that says that you cannot bring a class action. That passage only goes to the level of jurisdiction over which the legislature has. Equitable jurisdiction remains and always has remained in the courts and cannot be removed there from. Count 2 was pled under the unauthorized by law doctrine. As such, even if this court were to reject, and we don't believe it should, but if it should reject the tax objector's positions on Count 1, the Millennium Joint Venture case, pursuant to a long line of cases that was cited by both the tax objectors as well as the New Millennium Court, holds that the unauthorized by law doctrine allows the pleading of Count 2. If the Illinois Supreme Court stated in Clarendon v. Korzen, an unauthorized tax is an independent ground for equitable relief, and regardless of the existence of an adequate remedy at law, and that is regardless of the existence of an adequate remedy at law, the effect of those two decisions, frankly, greatly reduced the length of my argument. There are many things that are of record in this case, but I think in this case the real issues come down to those two cases and how they're going to be applied with respect to this case. I would point out that both with regard to the Millennium decision in the 1st District and the tax objection case out of the 3rd District, there are petitions for leave to appeal to the Illinois Supreme Court. I have not heard back from the Illinois Supreme Court since I filed that petition in July. For all the reasons of record, it's the position of the tax objectors that the trial court be reversed as to the striking of the doctrine of representation of Count 1 and the dismissal of Count 2 in its entirety. It's our position that the unauthorized by law exception applies in this case, and therefore Count 2 must be reinstated. Thank you. Counsel, can I ask you a question? Is the 3rd District a published opinion? It is now, but the remand has been withdrawn. Did you say it is now? It is, but they withdrew the remand. Once I filed the petition to the Illinois Supreme Court, the 3rd District withdrew the remand. So does that mean it's published, or does that mean it's held in abeyance until they make a determination with regard to the petition? What's the name of the case? The 3rd District case is in re tax objection to the 2005 tax levy of LaSalle County, and a copy of that is in my reply, as is the 1st District. Any other questions? We'll hear from you on rebuttal. Thank you. Good morning. May it please the Court, Counsel. My name is Ken Flory. I'm the attorney for Quincy School District. I will be splitting my time with co-counsel, Mr. Gorman. It will just take 10 minutes. Pleasure of the board. Although this case is not before you on the merits, I think you need to understand the facts, which are critical to the issue. You have to decide whether or not the rule unauthorized by law applies to this case. Quincy School District levied a tax under the Tort Immunity Act to pay for its risk management program. It is undisputed that the Tort Immunity Act, the express language of the Act, authorizes local governments to fund risk management programs through a tax levied under the Tort Immunity Act. The question in this case, which is not before you today, but may be, is whether the risk management program is legal. Not whether the tax is authorized to be levied, but now when you get into the merits of the case, is that risk management program set up by the school district legal? The third district faced nearly identical facts in the LaSalle County case, which counsel referred to. They were examining whether the county's use of the Tort Immunity Act levy to fund its risk management program was legal. Counsel raised the same argument. In that case, could they utilize the class action concept to pursue its case, which attacked the use of the tort levy for the county's risk management program? The facts are similar to the case that is before you. The only difference is we had a county using the tort levy fund to pay its risk management program. In the current case, we have the school district, Quincy School District, using the Tort Immunity Act levy to fund its risk management program. They don't object to you having a risk management plan or program. It's how the risk management plan directs that certain funds be spent or disbursed, right? Correct. Again, I said it's undisputed that we have the authority to levy this tax to pay for a risk management program. They're going into the heart of the program, how is it being spent, and is it a legal program under the Tort Immunity Act? The LaSalle court rejected the objector's attempt to use equity to then turn the case into a class action lawsuit based on the express language of 2315 of the property tax code that expressly prohibits the use of class action cases in tax objection cases. LaSalle followed the first district holding, Gibbett v. Orr, which also was cited in the Millennium Park that counsel referred to. In Gibbett, the objectors used similar tactics to try to take a tax objection case and turn it into a class action case. Through the use of the counsel in those cases, I argue that the court should use its equitable powers to turn the tax objection case into a class action suit. Gibbett similarly relies on Section 2315 of the property tax code to reject that argument. In the current case, we request that this court follow the holdings in the LaSalle County Claims and the Gibbett case. Millennium Park, which also cites Gibbett, does not change the result. It simply restates the rule that courts may use equity if the taxed issue in a tax objection case is unauthorized by law. Objectors tried to use this rule of law in the Freeport School District case, which again is a case about a school district, a park district, and a community college's use of the Tort Community Act levy to fund risk management programs. That case was before the second district on certified questions in their locatory appeal, and the court ruled that Pearl City School District, their risk management program was legal under the Act, and they could use the levy to pay for its risk management program. The court ruled that Freeport School District, their program was not legal, the park district's program was not legal, and for the Highland Community College, the second district ruled in part it was a legal tax, in part it was not legal. These different rulings in the Freeport decision are critical because counsel is trying to bootstrap that case into its current case to argue that the court should use its equitable powers because the second district has determined that tort funds are not authorized by law to pay for risk management programs. It's simply wrong. It ignores the express language of the Tort Community Act, and it really mischaracterizes the ruling in the Freeport case, takes it out of context, and tries to apply it to the current case. There was no issue of the court's use of equitable powers in the Freeport case. To take language from that case out of context, as you will hear in the reply brief, to put it into the context of an equitable argument where the authorized by law language is at issue is simply misplaced. Again, it's undisputed that the express language of the Tort Act authorizes local governments to pay for risk management programs through a tort levy. The question then simply becomes, is that program legal or illegal under the Tort Community Act? And that analysis does not bring its equitable powers into play, which would justify taking a group of cases, tax objection cases, and turning them into class action lawsuits. Again, we request that this court follow the holdings of LaSalle County, the 3rd District, and give it in the 1st District. Thank you. May it please the Court, Brett Gorman, also the Quincy School District. Your Honors, I wanted to just address this briefly in terms of perhaps some of the implications that flow from this argument that the doctrine of representation should be applied in this case to open this up to all of the constituents, basically, of the Quincy School District. Not just those who have joined in the lawsuit, which number about 1,000, a very small percentage of all property owners within the Quincy School District. In 1995, the legislature struck a balance when it made these amendments to the property tax code. It balanced the rights of taxpayers to petition the courts to address grievances with respect to the taxing bodies' tax levies against the government's ability, basically, to collect taxes and provide them. One of those functions, of course, is the important issue of educating the children in our public schools. So there's a lot at stake here. The question becomes, if the objectors have their way, and if we throw this open to everyone, the question becomes, what is the effect of that? How do we apply that? And we know that class actions are prohibited. So we're faced with the idea and the prospect here of going back to pre-1977 case law that talks about representative lawsuits and how we would administer that in the courts. And we would be forced with having to fight tooth and nail over issues like, are the taxpayers who come before the court, are they adequate representatives of everybody within the Quincy School District's taxing district? Are these issues appropriate to have a court adjudicate across the board, as it applies to everybody within the taxing district? And I would submit to the court, I don't think it's too far-fetched to say that this has extremely broad, possibly chaotic and disruptive implications for the ability of the Quincy School District to perform its duties. To perform its essential function. Because what happens is, as the tax objectors have done here, in count two, they are seeking not only to represent everybody within the district, but also to enjoin the county treasurer from collecting these taxes. They're seeking a refund as far back as equity allows, whatever that means. And so here we are, opening up the school district to having to potentially refund taxes that are long gone. And it doesn't make sense on these facts. And the courts have actually, this is nothing new. I mean, as we've pointed out in our briefs, and I've cited this 1944 Ames v. Schlager case, where it was the same kind of facts. The party filed suit and was asking the court to represent everybody within Cook County to bring a representative suit in equity to the district. To obtain a refund and to enjoin the collection of taxes. And what the court said there was, and this was applying the Revenue Act of like 1937, which is one of the first, as I understand it, pay under protest schemes outside of equity. The court talks about the disruption that would arise out of such a scenario. And they say, to permit tax objections under these circumstances to be tried by injunction would hopelessly disrupt the orderly administration of the tax collecting machinery, thereby embarrassing and deranging the operations of the government and causing serious detriment to the public. We would submit to the court that that is exactly what would happen here if the tax objectors have their way to represent everybody within the taxing district. This is a case where I believe, and I appreciate the idea that the issues have supposedly been narrowed between the Millennium Park case and this LaSalle County case. We chased hundreds, I think, cases cited in the objector's briefs trying to distill the argument. And it may just be the timing of the issue and the two cases that have come down over the course of the summer. But clearly, these were not the arguments that were stated, I believe, in the plaintiff's brief. But we think that the issue really still is whether there is an adequate remedy of law and the case can be decided solely on that basis without reaching all of these other side issues which we try to chase down. And what we would ask the court to do is to follow the precedent established by the third district in finding that the property tax code does present an adequate remedy of law for these taxpayers. We don't need to reach all of these issues. The property tax code, that's what it's there for and there's no reason to delve into these equitable theories that the objectors present. Thank you. Thank you. As we refer to the application of Rosewell at 236 L.F. 3rd, 165 in the Cohn v. Oscar L. Parris case. With regard to the Rosewell case, they stated, the class action is permissible in tax objection cases. We now turn to the argument that a class action in tax objection cases is against public policy. The collector claims that allowing class actions in tax cases would create a financial debacle causing taxing bodies to become bankrupt. Class action suit merely eases the difficulty of asserting and perfecting legitimate claims. Taxpayers who have legitimate claims should have the total resources of our legal system available to them. That case arose before the amendments of 94 and 95. The point I'm making is that prior to those amendments, class relief or representative relief was allowed. The public policy argument that was just made was rejected. What branch of government is in charge of establishing the public policy of the state? I think there's two different branches that can do that. It depends on whether we're in the equitable jurisdictions of the court or whether we are in the legislature. The legislature, to the extent that it has the authority to legislate, can establish that public policy. But it cannot remove equitable jurisdiction from the courts. When they passed 2315 and said there can be no class action, their authority was limited to what they can do under the Illinois Code of Civil Procedure, which they had previously allowed class action relief. By removing that ability to regulate, by deciding we're no longer going to regulate this by statute, they opened it to the courts because the courts have historically allowed for representative relief. The Doctrine of Representation goes back hundreds of years to allow for this kind of relief. We didn't always have class action relief. In fact, in this state, prior to 1977, we didn't have it at all. We were one of the last states to adopt it to the Code of Civil Procedure. Consequently, it's not that the state legislature and the property tax code has decided to regulate. Rather, it is the complete removal of a remedy at law that opens this up to equity. And I would point out that with regard to this form of equity, you do not have to prove that you have a remedy at law. The fact that there may be some forms of remedy does not mean you have to exhaust those before the court gets equitable jurisdiction. And that's why we quoted those cases, and that's actually what the Millennium Joint Venture case once again reiterated. With regard to unauthorized, the Quincy School District has pointed out that they believe that the paying of salaries is authorized. That's not correct. What's authorized is the use of a risk management plan. And the risk management plan, pursuant to the 2nd District's decision in 865 North East 2nd, 861, requires that they comply that plan with what is known as the Sexton-Williams definition. The definitions with regard to some of these issues have been developed by the court. And what the court stated was that, in summary, we agree with the trial court that at least some of the Pearl City School District's salary expenditures were permissible under the Act, and that the Freeport School District's and the Freeport Park District's expenditures were not authorized. That's the key. It's not authorized under the Act. That's why we sought the Doctrine of Equitable Representation. That's why we filed the claim in equity. And that's what the Millennium Joint Venture case says that we have the authority to do, and that is not barred by the property tax code. But isn't there a difference between saying the expenditures aren't authorized versus the levies not authorized? Actually, what you end up doing is a factual inquiry with regard to those expenditures and how they work underneath the plan. And then, to the extent that you have things that fall within the plan, if the plan falls within the Sexton-Williams definition, then you may or may not have authorization. But it's the authorization that the definition applies to. Because when you go to 9107, it says it's to be narrowly construed. This is extraordinary relief. You're either within this statute or you're not. And if you're not, it's unauthorized. And that's actually what the Sexton District went through when they were applying that Sexton-Williams definition. Thank you, Counsel. I take this matter under advise.